| | |
|---|---|
| **Brandy Murphy, Pamela O'Donnell, Lisa Streeter, and Robin Wells, individually and on behalf of all others similarly situated,** | |
| *Plaintiffs*, | |
| **v.** | Case No.: <u>2:24-cv-5569</u> |
| **Kohl's Inc.,** | |
| *Defendant.* | |
| | **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs Brandy Murphy, Pamela O'Donnell, Lisa Streeter, and Robin Wells, ("Plaintiffs") bring this Class Action Complaint against Kohl's Inc., ("Defendant") as individuals and on behalf of all others similarly situated, and allege, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.      Plaintiffs bring this class action against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII") of its customers, including, but not limited to: full names, social security numbers, addresses, birthdays, and other account information.

2.      Defendant Kohl's Inc. (hereinafter as "Defendant" or "Kohl's") is a department store chain with locations throughout the United States. Kohl's sells home goods and clothing.

Kohl's provides a variety of services and programs to customers who sign up and become members at the store. This includes a credit card program that shoppers can participate in and requires customers to provide their PII in connection with the transaction.

3.     Defendant's published privacy policy provides, "to the extent that we use or disclose 'sensitive personal information' or 'sensitive data' as those terms are defined in applicable privacy laws, we limit our use or disclosure of the sensitive personal information for permitted business purposes."[1]

4.     Around April 2024, Defendant was notified by a third-party vendor of unusual activity within the vendor's IT systems and determined that Plaintiffs' personal information—which was entrusted to Defendant on the mutual understanding that Defendant would protect it against unauthorized disclosure—was accessed and exfiltrated in a data breach that occurred on, or about, February 14, 2024 until on, or about, February 26, 2024  (hereafter referred to as the "Data Breach").

5.     Around August 2024, Defendant sent out data breach notice letters to individuals who were affected by the data breach.

6.     Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' PII was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

7.     The Data Breach was a direct result of Defendant's failure to implement reasonable safeguards to protect PII from a foreseeable and preventable risk of unauthorized disclosure. Had

---

[1] https://www.kohls.com/feature/privacy-policy.jsp#security accessed Oct. 17, 2024.

Defendant implemented administrative, technical, and physical controls consistent with industry standards and best practices, it could have prevented the Data Breach.

8. Defendant's conduct resulted in the unauthorized disclosure of Plaintiffs' private information to cybercriminals. The unauthorized disclosure of Plaintiffs' PII constitutes an invasion of a legally protected privacy interest, that is traceable to the Defendant's failure to adequately secure the PII in its custody, and has resulted in actual, particularized, and concrete harm to the Plaintiffs. Plaintiffs suffered actual injury in the form of damages to and diminution in the value of the PII that was compromised as a result of the Data Breach. The injuries Plaintiffs suffered, as described herein, can be redressed by a favorable decision in this matter.

9. Defendant has not provided any assurances that: all data acquired in the Data Breach, or copies thereof, have been recovered or destroyed; or, that Defendant has modified its data protection policies, procedures, and practices sufficient to avoid future, similar, data breaches.

10. Defendant's conduct, as evidenced by the circumstances of the Data Breach, has created a substantial risk of future identity theft, fraud, or other forms of exploitation. The circumstances demonstrating a substantial risk of future exploitation include, but are not limited to:

    a. **Sensitive Data Type**: The data acquired in the Data Breach included unencrypted social security numbers, dates of birth, addresses, and other account information.[2] Upon information and belief, this category of data is used by cybercriminals to perpetuate fraud, identity theft, and other forms of exploitation.[3]

    b. **Data Breach Type**: The debt collection firm used by Kohl's for its store credit cards, Financial Business and Consumer Solutions Inc. ("FBCS"), released a statement in April 2024 that an unauthorized user had gained access to their networks and had access to customer records. FBCS reported that over 4.2

---

[2] https://www.law360.com/articles/1888527/kohl-s-sued-after-vendor-hack-leaks-1-9m-customers-files accessed Oct. 17, 2024.
[3] https://www.f-secure.com/us-en/articles/why-do-hackers-want-your-personal-information accessed Oct. 17, 2024.

million records were leaked due to the hack, which lasted between Feb. 14 and Feb. 26, 2024. Kohl's waited until August this year to notify the affected customers. From what is currently known, it is estimated that 1.9 million customers whose accounts had been sent to FBCS have been breached and their information leaked.[4]

11.     The imminent risk of future harm resulting from the Data Breach is traceable to the Defendant's failure to adequately secure the PII in its custody, and has created a separate, particularized, and concrete harm to the Plaintiffs.

12.     More specifically, the Plaintiffs' exposure to the substantial risk of future exploitation caused them to: (i) spend money on mitigation measures like credit monitoring services and/or dark web searches; (ii) lose time and effort spent responding to the Data Breach; and/or (iii) experience emotional distress associated with reviewing accounts for fraud, changing usernames and passwords or closing accounts to prevent fraud, and general anxiety over the consequences of the Data Breach. The harm Plaintiffs suffered can be redressed by a favorable decision in this matter.

13.     Plaintiffs face a substantial risk of future spam, phishing, or other social engineering attacks where their full names, social security numbers, birthdays, addresses, and other information, were stolen by a cybercriminal, known for stealing and reselling personal data on the dark web. Full names, social security numbers, birthdays, addresses, and other information can be used by cybercriminals to launch social engineering attacks designed to trick individuals into giving away sensitive information. Plaintiffs may incur out of pocket costs for purchasing products to protect from phishing, smishing (SMS message), vishing (voice messaging), pretexting, and other social engineering-based attacks.

---

[4] https://www.law360.com/articles/1888527/kohl-s-sued-after-vendor-hack-leaks-1-9m-customers-files accessed Oct. 17, 2024.

14. Armed with the PII acquired in the Data Breach, data thieves have already engaged in theft and can, in the future, commit a variety of crimes including, opening new financial accounts, taking out loans, using Plaintiffs' information to obtain government benefits, file fraudulent tax returns, obtain driver's licenses, and give false information to police during an arrest.

15. As a result of the Data Breach, Plaintiff suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be further misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access on the dark web or otherwise; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the data.

16. Plaintiffs bring this class action lawsuit individually, and on behalf of all those similarly situated, to address Defendant's inadequate data protection practices and for failing to provide timely and adequate notice of the Data Breach.

17. Through this Complaint, Plaintiffs seek to remedy these harms individually, and on behalf of all similarly situated individuals whose PII was accessed during the Data Breach. Plaintiffs have a continuing interest in ensuring that personal information is kept confidential and protected from disclosure, and Plaintiffs should be entitled to injunctive and other equitable relief.

## JURISDICTION & VENUE

18.    This Court has subject matter jurisdiction over this action under 28 U.S.C.§1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class, including Plaintiffs are citizen of a state different from Defendant.

19.    This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the laws, rights, and benefits of the State of Pennsylvania by doing business there including operating multiple store locations and offering its different programs and services, such as its credit cards.

20.    Venue is proper under 28 U.S.C §1391(b) because Defendant does business in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

## **PARTIES**

21.    Plaintiff Brandy Murphy is a citizen of the State of South Carolina. At all relevant times, Plaintiff has been a resident of Seneca, South Carolina.

22.    Plaintiff Pamela O'Donnell is a citizen of the State of South Carolina. At all relevant times, Plaintiff has been a resident of Charleston, South Carolina.

23.    Plaintiff Lisa Streeter is a citizen of the State of South Carolina. At all relevant times, Plaintiff has been a resident of Clinton, South Carolina.

24.    Plaintiff Robin Wells is a citizen of the State of South Carolina. At all relevant times, Plaintiff has been a resident of Sumter, South Carolina.

25.    Defendant, Kohl's Inc., is a Delaware corporation that maintains a principal place of business in Menomonee Falls, Wisconsin.

## FACTUAL ALLEGATIONS

26.     Defendant Kohl's sells home goods and clothing. Kohl's provides a variety of services and programs to customers who sign up and become members at the store. This includes a credit card program that shoppers can participate in and requires customers to provide their PII in connection with the transaction.

27.     Plaintiffs and Class Members (later defined) are current and former customers of Defendant's various services.

28.     In the course of their relationship, Plaintiffs and Class Members, provided Defendant with at least the following: full names, dates of birth, social security numbers, addresses, and other information.

29.     Defendant promised to use reasonable technical, administrative, and physical safeguards to protect the PII it collected.  These promises were contained in the applicable privacy policy and through other disclosures in compliance with statutory privacy requirements.

30.     Plaintiffs and the Class Members, as customers of Defendant, relied on these representations and on this sophisticated business entity to keep their PII confidential, securely maintained, and to make only authorized disclosures of this information.

31.     Around April 2024, Defendant was notified by a third-party vendor of unusual activity within the vendor's IT systems and determined that Plaintiffs' personal information was accessed and exfiltrated in the Data Breach.

32.     In August 2024, Defendant sent out data breach notice letters to individuals who were affected by the data breach.

### *Data Breaches Are Avoidable*

33. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiffs' PII was a known risk to Defendant, and thus, Defendant was on notice that failing to take steps necessary to secure the PII from those risks left the data in a dangerous condition.

34. Upon information and belief, the Data Breach was a direct result of Defendant's failure to: (i) identify risks and potential effects of collecting, maintaining, and sharing personal information; (ii) adhere to its published privacy practices; (iii) implement reasonable data protection measures for the collection, use, disclosure, and storage of personal information; and/or (iv) ensure its third-party vendors were required to implement reasonable data protection measures consistent with Defendant's data protection obligations.

35. To detect and prevent cyber-attacks, Defendant could and should have implemented the following measures:

Reasonable Safeguards

a. Regularly patch critical vulnerabilities in operating systems, software, and firmware on devices. Consider using a centralized patch management system.

b. Check expert websites (such as www.us-cert.gov) and your software vendors' websites regularly for alerts about new vulnerabilities and implement policies for installing vendor-approved patches to correct problems.

c. Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks. Depending on your circumstances, appropriate assessments may range from having a knowledgeable employee run off-the-shelf security software to having an independent professional conduct a full-scale security audit.

d. Scan computers on your network to identify and profile the operating system and open network services. If you find services that you don't need, disable them to prevent hacks or other potential security problems.

e. Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

f. Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email.

g.  Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

h.  Configure firewalls to block access to known malicious IP addresses.

i.  Set anti-virus and anti-malware programs to conduct regular scans automatically.

j.  Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

k.  Configure access controls—including file, directory, and network share permissions— with least privilege in mind. If a user only needs to read specific files, the user should not have write access to those files, directories, or shares.

l.  Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

m.  Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

n.  Consider disabling Remote Desktop protocol (RDP) if it is not being used.

o.  Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

p.  Execute operating system environments or specific programs in a virtualized environment.

q.  Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.

r.  Conduct an annual penetration test and vulnerability assessment.

s.  Secure your backups.[5]

t.  Identify the computers or servers where sensitive personal information is stored.

u.  Identify all connections to the computers where you store sensitive information. These may include the internet, electronic cash registers, computers at your branch offices, computers used by service providers to support your network, digital copiers, and wireless devices like smartphones, tablets, or inventory scanners.

v.  Don't store sensitive consumer data on any computer with an internet connection unless it's essential for conducting your business.

w.  Encrypt sensitive information that you send to third parties over public networks (like the internet) and encrypt sensitive information that is stored on your computer

---

[5] *How to Protect Your Networks from Ransomware*, at p.3, https://www.fbi.gov/file-repository/ransomware-prevention-and-response-for-cisos.pdf/view (accessed June 11, 2024).

network, laptops, or portable storage devices used by your employees. Consider also encrypting email transmissions within your business.

x. Regularly run up-to-date anti-malware programs on individual computers and on servers on your network.

y. Restrict employees' ability to download unauthorized software. Software downloaded to devices that connect to your network (computers, smartphones, and tablets) could be used to distribute malware.

z. To detect network breaches when they occur, consider using an intrusion detection system.

aa. Create a "culture of security" by implementing a regular schedule of employee training. Update employees as you find out about new risks and vulnerabilities.

bb. Tell employees about your company policies regarding keeping information secure and confidential. Post reminders in areas where sensitive information is used or stored, as well as where employees congregate.

cc. Teach employees about the dangers of spear phishing—emails containing information that makes the emails look legitimate. These emails may appear to come from someone within your company, generally someone in a position of authority. Make it office policy to independently verify any emails requesting sensitive information.

dd. Before you outsource any of your business functions investigate the company's data security practices and compare their standards to yours.[6]

36.     Given that Defendant collected, used, and stored PII, Defendant could and should have identified the risks and potential effects of collecting, maintaining, and sharing personal information.

37.     Without identifying the potential risks to the personal data in Defendant's possession, Defendant could not identify and implement the necessary measures to detect and prevent cyberattacks. The occurrence of the Data Breach indicates that Defendant failed to adequately implement one or more of the above measures to prevent cyberattacks, resulting in the Data Breach and the exposure of Plaintiffs' and the Class Members' PII.

---

[6] *Protecting Personal Information: A Guide for Business*, https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (accessed Oct. 17, 2024).

38.     Defendant knew and understood unencrypted PII is valuable and highly sought after by cybercriminals seeking to illegally monetize that data. At all relevant times, Defendant knew, or reasonably should have known, of the importance of safeguarding PII and of the foreseeable consequences that would occur if a data breach occurred, including the significant cost that would be imposed on Plaintiff and the Class Members as a result.

### *Plaintiffs and Class Members Sustained Damages in the Data Breach*

39.     The invasion of the Plaintiffs' and Class Members' privacy suffered in this Data Breach constitutes an actual, particularized, redressable injury traceable to the Defendant's conduct. As a consequence of the Data Breach, Plaintiffs and Class Members sustained monetary damages that exceed the sum or value of $5,000,000.00.

40.     Additionally, Plaintiffs and Class Members face a substantial risk of future identity theft, fraud, or other exploitation where their names, social security numbers, addresses, dates of birth, and other information were targeted by a sophisticated hacker known for stealing and reselling sensitive data on the dark web. The substantial risk of future identity theft and fraud created by the Data Breach constitutes a redressable injury traceable to the Defendant's conduct.

41.     Furthermore, Plaintiffs and Class Members face a substantial risk of future spam, phishing, or other attacks designed to trick them into sharing sensitive data, downloading malware, or otherwise exposing themselves to cybercrime, where their names and contact information were acquired in the Data Breach and subsequently released on the dark web. The substantial risk of future exploitation created by the Data Breach constitutes a redressable injury traceable to the Defendant's conduct.

42.     Upon information and belief, a criminal can easily link data acquired in the Data Breach with information available from other sources to commit a variety of fraud related crimes.

An example of criminals piecing together bits and pieces of data is the development of "Fullz" packages.[7] With "Fullz" packages, cyber-criminals can combine multiple sources of PII to apply for credit cards, loans, assume identities, or take over accounts.

43. Given the type of targeted attack in this case, the sophistication of the criminal claiming responsibility for the Data Breach, the type of PII involved in the Data Breach, the hacker's behavior in prior data breaches, the ability of criminals to link data acquired in the Data Breach with information available from other sources, and the fact that the stolen information has been placed, or will be placed, on the dark web, it is reasonable for Plaintiffs and the Class Members to assume that their PII was obtained by, or released to, criminals intending to utilize the PII for future identity theft-related crimes or exploitation attempts.

44. The substantial risk of future identity theft, fraud, or other exploitation that Plaintiffs and Class Members face is sufficiently concrete, particularized, and imminent that it necessitates the present expenditure of funds to mitigate the risk. Consequently, Plaintiffs and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to understand and mitigate the effects of the Data Breach.

45. For example, the Federal Trade Commission has recommended steps that data breach victims take to protect themselves and their children after a data breach, including: (i) contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for seven years if someone steals their identity); (ii) regularly obtaining and reviewing their

---

[7] "Fullz" is term used by cybercriminals to describe "a package of all the personal and financial records that thieves would need to fraudulently open up new lines of credit in a person's name." A Fullz package typically includes the victim's name, address, credit card information, social security number, date of birth, bank name, routing number, bank account numbers and more. *See, e.g.*, Brian Krebs, *Medical Records for Sale in Underground Stolen From Texas Life Insurance Firm*, Krebs on Security (Sep. 18, 2014), https://krebsonsecurity.com/2014/09/medical-records-for-sale-in-underground-stolen-from-texas-life-insurance-firm

credit reports; (iii) removing fraudulent charges from their accounts; (iv) closing new accounts opened in their name; (v) placing a credit freeze on their credit; (vi) replacing government-issued identification; (vii) reporting misused Social Security numbers; (viii) contacting utilities to ensure no one obtained cable, electric, water, or other similar services in their name; and (ix) correcting their credit reports.[8]

46.     As a consequence of the Data Breach, Plaintiffs and Class Members sustained or will incur monetary damages to mitigate the effects of an imminent risk of future injury. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year. The cost of dark web scanning and monitoring services can cost around $180 per year.

47.     As a result of the Data Breach, Plaintiffs' and Class Members' PII, which has an inherent market value in both legitimate and illegitimate markets, has been damaged and diminished by its unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the PII is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

48.     Personal information is of great value, in 2019, the data brokering industry was worth roughly $200 billion.[9] Data such as name, address, phone number, and credit history has been sold at prices ranging from $40 to $200 per record.[10] Sensitive PII can sell for as much as $363 per record.[11]

---

[8] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps
[9] *Column: Shadowy data brokers make the most of their invisibility cloak*, https://www.latimes.com/business/story/2019-11-05/column-data-brokers
[10] *In the Dark*, VPNOverview, 2019, available at: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/
[11] *See, e.g.,* John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4

49.     Furthermore, Defendant's poor data security practices deprived Plaintiff and Class Members of the benefit of their bargain. By transacting business with Plaintiffs and Class Members, collecting their PII, using their PII for profit or to improve the ability to make profits, and then permitting the unauthorized disclosure of the PII, Plaintiffs and Class Members were deprived of the benefit of their bargain.

50.     When agreeing to pay Defendant for products or services, consumers understood and expected that they were, in part, paying for the protection of their personal data, when in fact, Defendant did not invest the funds into implementing reasonable data security practices. Accordingly, Plaintiffs and Class Members received services that were of a lesser value than what they reasonably expected to receive under the bargains they struck with Defendant.

51.     Through this Complaint, Plaintiffs seek redress individually, and on behalf of all similarly situated individuals, for the damages that resulted from the Data Breach.

## CLASS ALLEGATIONS

52.     Plaintiffs bring this nationwide class action individually, and on behalf of all similarly situated individuals, pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

53.     The Class that Plaintiff seeks to represent is defined as follows:

**Nationwide Class**
All individuals residing in the United States whose PII was accessed and acquired by an unauthorized party as a result of a data breach that occurred on, or about, February 14-February 26, 2024, as reported by Defendant Kohl's Inc., (the "Class").

**South Carolina Subclass**
All individuals residing in South Carolina whose PII was accessed and acquired by an unauthorized party as a result of a data breach that occurred on, or about February 14-February 26, 2024, as reported by Defendant Kohl's Inc., (the "South Carolina Subclass").

(2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

**Pennsylvania Subclass**

> All individuals residing in Pennsylvania whose PII was accessed and acquired by an unauthorized party as a result of a data breach that occurred on, or about February 14- February 26, 2024, as reported by Defendant Kohl's Inc., (the "Pennsylvania Subclass").

54. Collectively, the Class and the Subclasses are referred to as the "Classes" or "Class Members."

55. Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

56. Plaintiffs reserve the right to amend the definitions of the Classes or add a Class or Subclass if further information and discovery indicate that the definitions of the Classes should be narrowed, expanded, or otherwise modified.

57. <u>Numerosity</u>: The members of the Classes are so numerous that joinder of all members is impracticable, if not completely impossible. The members of the Classes are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time and such number is exclusively in the possession of Defendant, upon information and belief, 1.9 million individuals were impacted in the Data Breach.

58. Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting solely individual members of the Classes. The questions of law and fact common to the Classes that predominate over questions which may affect individual Class Members, includes the following:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiffs and Class Members;

b. Whether Defendant had a duty not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

c. Whether Defendant failed to adequately safeguard the PII of Plaintiffs and Class Members;

d. Whether Defendant required its third-party vendors to adequately safeguard the PII of Plaintiffs and Class Members;

e. When Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the practices, procedures, or vulnerabilities which permitted the Data Breach to occur;

j. Whether Plaintiffs and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

k. Whether Plaintiffs and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm faced as a result of the Data Breach.

59. <u>Typicality</u>: Plaintiffs' claims are typical of those of the other members of the Classes because Plaintiffs, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

60. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenges of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

61.     Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that Plaintiffs have no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiffs seek no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damages suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex class action and data breach litigation, and Plaintiffs intend to prosecute this action vigorously.

62.     Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

63.     The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced

by the Classes and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

64.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

65.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

66.    Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Classes, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

67.    Further, Defendant has acted on grounds that apply generally to the Classes as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

68.    Likewise, particular issues under Rule 42(d)(1) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

     a.  Whether Defendant failed to timely notify the Plaintiffs and the Classes of the Data Breach;

     b.  Whether Defendant owed a legal duty to Plaintiffs and the Classes to exercise due care in collecting, sharing, storing, and safeguarding their PII;

c.  Whether Defendant's (or their vendors') security measures to protect its network were reasonable in light of industry best practices;

d.  Whether Defendant's (or their vendors') failure to institute adequate data protection measures amounted to negligence;

e.  Whether Defendant failed to take commercially reasonable steps to safeguard consumer PII;

f.  Whether Defendant made false representations about their data privacy practices and commitment to the security and confidentiality of customer information; and

g.  Whether adherence to FTC recommendations and best practices for protecting personal information would have reasonably prevented the Data Breach.


### CAUSES OF ACTION
#### (*On behalf of Plaintiffs and the Classes*)

### COUNT 1: NEGLIGENCE and NEGLIGENCE *PER SE*

69.  Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.  Defendant requires their customers, including Plaintiffs and Class Members, to submit PII in the ordinary course of providing products or services.

71.  Defendant gathered and stored the PII of Plaintiffs and Class Members as part of its business of soliciting its services to customers. Plaintiffs and Class Members entrusted Defendant with their PII with the understanding that Defendant would adequately safeguard their information.

72.  Defendant had full knowledge of the types of PII it collected and the types of harm that Plaintiffs and Class Members would suffer if that data was accessed and exfiltrated by an unauthorized third-party.

73.  By collecting, storing, sharing, and using the Plaintiffs' and Class Members' PII for commercial gain, Defendant assumed a duty to use reasonable means to safeguard the personal data it obtained.

74.     Defendant's duty included a responsibility to ensure it: (i) implemented reasonable administrative, technical, and physical measures to detect and prevent unauthorized intrusions into its information technology and/or cloud environments; (ii) contractually obligated its vendors to adhere to the requirements of Defendant's privacy policy; (iii) complied with applicable statutes and data protection obligations; (iv) conducted regular privacy assessments and security audits of Defendant's and/or its vendors' data processing activities; (v) regularly audited for compliance with contractual and other applicable data protection obligations; and, (vi) provided timely notice to individuals impacted by a data breach event.

75.     Defendant had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits unfair or deceptive trade practices that affect commerce. Deceptive practices, as interpreted by the FTC, include failing to adhere to a company's own published privacy policies.

76.     Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII that Defendant was no longer required to retain.

77.     Defendant had a duty to notify Plaintiffs and the Classes of the Data Breach promptly and adequately. Such notice was necessary to allow Plaintiffs and the Classes to take steps to prevent, mitigate, and repair any fraudulent usage of their PII.

78.     Defendant violated Section 5 of the FTC Act by failing to adhere to its own privacy policy[12] regarding the confidentiality and security of Plaintiffs and Class Members information. Defendant further violated Section 5 of the FTC Act, and other state consumer protection statutes by failing to use reasonable measures to protect PII. Defendant's violations of Section 5 of the FTC Act, and other state consumer protection statutes, constitutes negligence *per se.*

---

[12] https://www.kohls.com/feature/privacy-policy.jsp#security (last accessed Oct. 17, 2024).

79.     Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' PII. The specific negligent acts and omissions committed by Defendant includes, but are not limited to, the following:

    a.  Failing to implement organizational controls, including a patch management policy to track and manage updates and patches for known vulnerabilities.

    b.  Failing to have defined periods when patches must be installed and/or an automated means of determining what patches are needed, where they are needed, and the status of current patch levels by location.

    c.  Failing to encrypt personally identifying information in transit and at rest.

    d.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' PII.

    e.  Failing to adequately monitor the security of their networks and systems.

    f.  Allowing unauthorized access to PII.

    g.  Failing to detect in a timely manner that PII had been compromised.

    h.  Failing to remove former customers' PII it was no longer required to retain.

    i.  Failing to timely and adequately notify Plaintiff and Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

    j.  Failing to implement data security practices consistent with Defendant's published privacy policies.

80.     Plaintiffs and Class Members were within the class of persons the Federal Trade Commission Act was intended to protect and the type of harm that resulted from the Data Breach was the type of harm the statue was intended to guard against.

81.     The injuries resulting to Plaintiffs and the Classes because of Defendant's failure to use adequate security measures was reasonably foreseeable.

82.     Plaintiffs and the Classes were the foreseeable victims of a data breach. Defendant knew or should have known of the inherent risks in collecting and storing PII, the critical

importance of protecting that PII, and the necessity of updating, patching, or fixing critical vulnerabilities in its network.

83.     Plaintiffs and the Classes had no ability to protect the PII in Defendant's possession. Defendant was in the best position to protect against the harms suffered by Plaintiffs and the Classes as a result of the Data Breach.

84.     But for Defendant's breach of duties owed to Plaintiffs and the Classes, their PII would not have been compromised. There is a close causal connection between Defendant's failure to implement reasonable security measures to protect the PII of Plaintiffs and the Classes and the harm, or risk of imminent harm, suffered by Plaintiffs and the Classes.

85.     As a result of the Data Breach, Plaintiffs and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII.

86.     Plaintiffs and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

87.     Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

## COUNT 2: BREACH OF IMPLIED CONTRACT

88.    Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

89.    Defendant requires their customers, including Plaintiffs and Class Members, to submit PII in the ordinary course of providing products or services.

90.    Defendant published a privacy policy to inform the public about how Defendant collects, uses, shares, and protects the information Defendant gathers in connection with the provision of those products or services.

91.    In so doing, Plaintiffs and Class Members entered implied contracts with Defendant by which Defendant agreed to use reasonable technical, administrative, and physical safeguards to protect against unauthorized access to, use of, or disclosure of the personal information it collects and stores.

92.    Plaintiffs and Class Members would not have entrusted their PII to Defendant in the absence of an expressed or implied promise to implement reasonable data protection measures.

93.    Plaintiffs and Class Members fully and adequately performed their obligations under the implied contract with Defendant.

94.    Defendant breached the implied contract with Plaintiffs and Class Members which arose from the course of conduct between the parties, as well as disclosures on the Defendant's web site, privacy policy, and in other documents, all of which created a reasonable expectation that the personal information Defendant collected would be adequately protected and that the Defendant would take such actions as were necessary to prevent unauthorized access to, use of, or disclosure of such information.

95. As a direct and proximate result of the Defendant's breach of an implied contract, Plaintiffs and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII.

96. Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendant to: (i) strengthen its data protection procedures; (ii) patch all critical vulnerabilities; and (iii) to provide adequate credit monitoring to all affected by the Data Breach.

## COUNT 3: UNJUST ENRICHMENT

97. Plaintiffs re-allege and incorporate by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

98. Plaintiffs bring this Count in the alternative to the breach of implied contract count above.

99. By providing their PII, Plaintiffs and Class Members conferred a monetary benefit on Defendant. Defendant used the PII to market, advertise, and sell additional services to Plaintiffs and Class Members. Defendant knew that Plaintiffs and Class Members conferred a benefit upon them and have accepted and retained that benefit.

100. By collecting the PII, Defendant was obligated to safeguard and protect such information, to keep such information confidential, and to timely and accurately notify Plaintiffs and Class Members if their data had been compromised or stolen.

101. Defendant failed to secure Plaintiffs' and Class Members' PII and, therefore, it would be unjust for Defendant to retain any of the benefits that Plaintiffs and Class Members conferred upon Defendant without paying value in return.

102. As a direct and proximate result of the Defendant's conduct, Plaintiffs and Class Members suffered injuries including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) experiencing an increase in spam calls, texts, and/or emails; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and increased risk their PII will be misused, where: (a) their data remains unencrypted and available for unauthorized third parties to access; and (b) remains backed up under Defendant's possession or control and is subject to further unauthorized disclosures so long as Defendant fails to implement appropriate and reasonable measures to protect the PII.

103. Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the other members of the Classes alleged herein, respectfully requests that the Court enter judgment as follows:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as the representatives for the Classes and counsel for Plaintiffs as Class Counsel;

B. For an order declaring the Defendant's conduct violates the statues and causes of action referenced herein;

C. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D. Ordering Defendant to pay for lifetime credit monitoring and dark web scanning services for Plaintiffs and the Classes;

E. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

F. For prejudgment interest on all amounts awarded;

G. For an order of restitution and all other forms of equitable monetary relief requiring the disgorgement of the revenues wrongfully retained as a result of the Defendant's conduct;

H. For injunctive relief as pleaded or as the Court may deem proper; and

I. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit, and any other expense, including expert witness fees; and

J. Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Respectfully submitted,

DATED: October 21, 2024

/s/ *Stuart Guber*
**POULIN | WILLEY | ANASTOPOULO**
Paul J. Doolittle, Esq.[*]
32 Ann Street
Charleston, SC 29403
Telephone: (803) 222-2222
Fax: (843) 494-5536
Email: stuart.guber@poulinwilley.com

cmad@poulinwilley.com
paul.doolittle@poulinwilley.com

*Attorneys for Plaintiffs*

*\*Pro Hac Vice forthcoming*